This is Rhetoric v. FDIC Good morning, I'm Farrar Shah, counsel for the petitioner Timothy Reddick. Commissioner Shah, you're reserving three minutes for rebuttal time, is that correct? That's correct. With me at counsel's table is my colleague Larry Atkins. The sole issue before this court is whether FDIC removed Mr. Reddick from his position within the meaning of section 7512 of Title V. If so, the arbitrator's ruling that Mr. Reddick was not removed and in turn not denied his section 7513 procedural rights must be set aside as contrary to law. I'd like to cover three things today. First, what is in the dispute between the parties. Second, why these areas of agreement coupled with the record below demonstrate that Mr. Reddick was removed from his position and denied his section 7513 procedural rights. Let me ask you a question. When Mr. Reddick got the offer to extend his employment by two years, and he qualified that offer by his having to meet certain qualifications, when he received the offer and he accepted the offer, did his two-year employment automatically extend to a four-year or are we still looking at two-year segments here? Our position is that upon acceptance, Mr. Reddick's two-year term employment transformed into a single four-year term. The plain language of FDIC's offer, which Mr. Reddick accepted, it uses the term offer of extension, and it then specifies that if accepted, the end date of Mr. Reddick's term appointment would change from September 26, 2012 to September 26, 2014. In other words, Mr. Reddick's term would be extended to September 2014, making it a four-year term, which is the maximum term possible under the applicable regulations. It adds up to four years, but when he was made the offer and he accepted, does that change the underlying nature of the employment from a two-year to a four-year employment? Yes, it does. What's the legal authority for that? FDIC has conceded that it relied on 5 CFR 316.301A in making this offer to Mr. Reddick. What that regulatory provision does is that it authorizes agencies to extend term appointments. In other words, it allows... Is there anything in that regulation that's inconsistent with stacking two-term appointments? I looked at it this morning and I didn't see anything that suggested that you couldn't, if you wanted to, say, we're going to give you one two-year appointment, and when you're getting near the end, say, we're going to extend this and give you another two-year appointment. Your Honor, that would be a reappointment. If there were two separate two-year terms, that would be a reappointment, and that is something that is dealt with in a different regulatory section than the one FDIC relied upon in making this offer. Michelle, what about the fact that the letter that was sent to Mr. Reddick, the April 13, 2012 letter, says that the extended employment for an additional period of 24 months is effective September 27, 2012. So I read that and it says that, all right, we're giving you this extension if you accept it. It becomes effective on September 27, 2012. So why wasn't the agency free to rescind it prior to September 27? I would agree if it said, maybe if it didn't say anything, or if it said effective immediately, but it says effective September 27, and the agency rescinded it before that date. Your Honor, that effective date language would make sense and come into play if we were dealing with two consecutive two-year appointments. But the problem is, it seems like you're suggesting that under that regulation, the agency could never, if it gives a term appointment, that regulation specifically says you start with two years, but it can go up to four, I think, or you start with one and it can go up to four, that they can never structure it such that if they wanted to extend, it could be a conditional extension. In your view, it seems like if they decide they want to keep somebody and they offer them an extension and they accept, then that's automatic. But that seems to be not just wrong legally, but from the way that agencies operate, a pretty bad idea. So there's two points there, Your Honor. First, the regulation treats separately term extensions, which is what we believe happened here, and reappointments to second consecutive terms. So let me just be clear, because I think I want to understand what you're saying. You're saying that regulation they relied on absolutely prohibits them stacking two term appointments together. If FDIC had wanted to stack two consecutive two-year terms together, it should have proceeded... Can you point to any language in that regulation that says that? Because it seems to me all it says is you can appoint somebody for a term appointment and then you can extend them for an additional period. But it doesn't say you can't do it as a new SF50 with a new not-to-exceed date. So the key term in 316.301 is extend. If you look at 316.302, that deals with reappointments. And FDIC has never argued that it relied on 316.302. It has conceded that it relied on 316.301. In other words, it is saying that it extended as opposed to making a reappointment. If there's a reappointment, would Mr. Reddick have to present a new employment document at that point? Yes, Your Honor. Our position is that had FDIC offered Mr. Reddick reappointment to his second consecutive two-year term in his competitive service position, it would have had to have done one of two things. Comply with Part 332's competitive service requirements or state or demonstrate that an exception to those competitive service requirements existed. It has never argued that it did one of those two things. And that further shows that this was not a reappointment. And that's consistent with the plain terms of the offer letter that he offered. I mean, your view is that this original SF50 that appointed him with a not-to-exceed date in 2012 was extended. But is the operative legal document this offer to extend in his acceptance? Yes. And what's the operative legal act there? The operative legal act is accepting. How can he create an operative legal act on part of the agency? Doesn't the agency have to effectively appoint him to a position? Mr. Reddick was already serving in his position. The agency was offering to... With a not-to-exceed date of 2012. What's the operative legal act that extended back to 2014? The offer and acceptance that you see at Joint Appendix 31. That document. When Mr. Reddick accepted, FDIC... So if that's the case, then when he reached the end of his 2012 appointment, there was no need for any further legal action by the agency. It was automatically extended. The September 26, 2012 end date was null and void upon Mr. Reddick's acceptance of FDIC's offer, which specified a new end date. That seems like that's not the way it would work. It seems like that at the end of the date, if you were actually going to be extended, the agency would have issued a new SF-50 with a new not-to-exceed date. But the implication of your argument is that the legal document is the offer and acceptance, and that new SF-50 is not necessary. Well, Your Honor, as to when the agency would issue a new SF-50, that is within the agency's purview. It could have done so upon receiving Mr. Reddick's acceptance, or FDIC's position is that it did not issue a new SF-50 until... It did not ever, but it did not plan to do so until this effective date specified... Can I get back to the thing I was trying to get at, and I think I got sidetracked? It seems, again, like your view is that there can't be any kind of conditional extension here, that once they do it, it's done. So why is that a good idea? I mean, I assume they're using these term appointments because they have an increased workload, but they're not sure that it's going to maintain at certain levels. And so they're going to offer an extension on a preliminary showing of good job performance because they want to keep these people and don't want them to go out to look for other jobs, but they want to reserve the right to not give them an extension if it turns out, sometimes during the course of that job, they're not doing a good performance. Why isn't that system upset by your notion of the law? Two points there, Your Honor. First, the agency's authority here is derived from the regulation, which says you may extend term appointments. It does not authorize the agencies to attach conditions. But more fundamentally, Your Honor, to the extent an agency... But it doesn't prohibit them from attaching conditions, does it? It does not explicitly do that. But more fundamentally, Your Honor, if at any point during Mr. Reddick's term, if the agency had a reason to think that, well, we do not wish to employ him any further, it should have proceeded as Congress intended, which is propose a removal, afford him his Section 7513 rights, and then proceed that way. Let me ask you this. What is it that... Let's say we find in favor of your client. What is it that you want? What do we do here? If you find for our client, Mr. Reddick should receive back pay for the two years that he was unable to work because he was effectively removed in a manner inconsistent with the statute. Okay, so we can't give him his job back. You're saying he gets back pay for the two years. Correct. Mr. Reddick's term would have expired one year ago. So going back to the letter where he was offered the employment, it says this extended employment is subject to the conditions of employment, and it goes on and says it's subject to your continued successful performance. After you got the letter, your client was adjudged not to have successful performance. Why were they not correct to rescind this offer? So two points there, Your Honor. Again, the agency's authority to offer this extension and extend Mr. Reddick's term of employment derives from the regulation. Nothing in the regulation allowed the attachment of conditions. So in your view, they can't do that. They can't say we're going to give you a conditional extension. It's either up or down. Once they give it to you, they're done. They're stuck with this guy. Your Honor, they're not stuck with this guy. They're stuck with giving him appeal rights. Rights to which he is entitled by statute. Well, only if he is an employee, but if he's serving in a term appointment and it expires, he's not. I mean, that's the whole purpose of using these term appointments sometimes is so that you don't bring on people and give them full appeal rights forever, that if their term expires and they're not performing satisfactorily, the agency doesn't have to retain them. Your Honor, the purpose of the regulation allowing extension of term appointments is to benefit the agency, is to allow efficiency. They want to go through the competitive service requirements, and it's to ensure continuity. They can keep somebody they want to keep. Here, FDIC purported to rescind based on some recordings that Mr. Reddick had completed in the course of his duties. There's no question here that FDIC knew about the conduct that it later based its rescission on before it extended the offer and that it didn't purport to rescind until four months after Mr. Reddick had accepted that offer. Counsel, you're into your rebuttal time. Do you want to stop now and I'll restore you back to your three minutes when you come back up? Yes, thank you. Mr. Sweet. Why is it that the letter that made the offer of the extended appointment, why did that change the underlying nature of the employment from a two-year to a four-year? Up until that letter, his end date was September 26, 2012, so it was only through that letter that he would have been extended beyond four months. However, as Your Honor pointed out, that letter expressly stated that the extension wouldn't be effective until September 27, 2012. It did not state that it would be effective upon acceptance. Therefore, that extension offer never became effective. But it's an offer of employment, isn't it? It's saying we're going to offer you a job. Do you want it or not? He said, yes, I do. Yes, but employment is not governed by contract law. The employee derives his benefits from the appointment, not from a contract. The purpose of this whole nature of extending these types of offers, the agency was implementing a program trying to preserve workers with experience and workers that were working on particular cases that may have been complex, and so you adopted this system of turning the two-year term into a four-year term. Well, I think that's not entirely accurate. The reason that they had these temporary employees was during the financial crisis, they were experiencing a surge in workload requirements, and so they needed people. But again, they weren't sure how long that was going to last. Right, so you have temporary employees, and you had a program by which you could make an offer and extend it to two years and make it into four years. Yes, that's correct. However, again, that extension never became effective. It would have become effective on September 27, 2012, but the agency revoked it before that. So it didn't become effective because of the activities that Mr. Reddick had engaged in, the recording activities and things. But it seems to me that when you look at the offer that was made and his acceptance that those activities had already taken place, if you're going to say we're appointing him to a new term and you look at the letters that said subject to your continued successful appointment or performance, doesn't that mean to his performance in the new term, or are you referring to the initial two-year term? The agency wasn't aware when it made the offer at the expense of his misconduct. The OIG report had not been issued at that point. This is the right hand, not the left hand. That's not entirely true. I mean, the OIG report hadn't come out yet, so they didn't have an official documentation yet as to the expense of his misconduct. There was a miscommunication, though you're correct, and the decision maker had thought that OIG had determined that his conduct wasn't bad. One question I just want to make sure I understand. You say at the beginning of your brief that we don't have jurisdiction because for purposes of 5 U.S.C. 4303, the agency, the FDIC is not an agency, right? Correct. And you're saying that we don't have jurisdiction under 7512 not because the FDIC isn't an agency, but because he wasn't removed. Is that correct? Oh, that's correct, Your Honor. So really, the 7512 argument, the jurisdiction argument here, is really kind of intertwined with the merits of what we've been discussing. Exactly. I'm sorry to interrupt. I just want to make sure I understood that. Oh, no, and just to be clear, the fact that the FDIC is a government corporation does not preclude jurisdiction under 7512. That only applies to 7512. I thought that was the case, but I just want to make sure. Yes, and it appears from Mr. Reddick's reply that he's not relying on 4303 and he's only relying on 7512. Did I hear you correct that the agency wasn't aware of Mr. Reddick's activities until the OIG report came out? No, I said that they didn't know the full extent of it. But they were aware of it. Yes. When the letter came out, the agency was aware of those activities. Yes, they didn't have the OIG report, but they knew that he had surreptitiously recorded conversations. Well, it was reflected in his performance review in March. Yes. His supervisors were critical of him for not demonstrating good judgment, and that showed up in his March performance evaluation, right? Yes, that's correct. And despite that evaluation, he still made the offer for employment. Yes, that's correct. But again, that was before you had an OIG investigation report. What did the OIG investigative report show that changed that? It showed the number of recordings, but also, as the arbitrator found, there is a difference between just having the allegations and not having the complete report and then having OIG saying that there was illegal activity, which is what the report showed. But I also want to point out that there was a misunderstanding and that the decision maker had thought that OIG had concluded that the activity was not illegal, when in fact OIG had only determined that the U.S. attorney was not going to prosecute. But ultimately, the OIG report showed illegal activity? Yes. Where does it do that? I believe he says it's illegal in California to record secretly.  I think this is where the DA in California, you're saying in California, in some states a conversation, I guess, can be recorded with the consent of one of the parties, whereas in California they both have to consent. And what you're saying is that the local California authorities, although Mr. Reddick had violated that particular statute, chose not to pursue any criminal. That's correct. I don't have the exact page here, but I do recall that the OIG report stated that it's illegal to record conversations without dual consent. One of the things you mentioned in responding to Judge Rainer's question was deciding persons. Who ultimately had authority here to make a decision as to an extension or a non-extension? Because clearly in the record we have the immediate supervisor sending the letter and Mr. Reddick accepting it, but then people higher up the chain. Is there a regulation or anything that says who had the final word on this? There's nothing in the record, but the record does show that the Human Resources Department did sign off on the letter. The April 13 letter? Yes. No, I'm sorry, the initial letter offering to extend. That's the April 13 letter. Right. So they ultimately had authority, but there's no dispute that authority was granted to issue that April 13 letter. Let's go back a little bit to whether there's criminal activity or not, because I think it makes a difference. Now, the Department of Justice email that reviewed this issue says, the language of the California Penal Code, Section 632, does not explicitly address the issue whether the statute was intended to apply when one party to a telephone call is in California and another party is outside of California. So the record, the way I saw it, was that there was no determination of illegal activity, that they could not resolve that particular question, and I believe that's at JA57. The reason this is important to me, because I'm looking at on what basis was he removed after he made the offer of employment. It seems to me that the record is clear that the agency was aware that he was recording conversations. They were aware to the extent that he had done this, and they knew it was a problem, and they went ahead and made the offer of employment notwithstanding that. This letter, Your Honor, on JA57, that's the misunderstanding. This is what the conversation that was the basis for offering the letter. So this is showing that there was a misunderstanding as to whether it was illegal or not. Right. I mean, the letter shows that it's up in the air. The law is not clear in California. And that was the misperception. That's what they thought when they offered the extension letter. They thought it was unclear. Ultimately, and again, I apologize, I'm looking for it, but if you look at the OIG investigation report, they determined that that's incorrect and that's clear under California law that you need dual consent. Go ahead. No, I was just going to say, where's the OIG report? I believe that's in the appendix. I remember seeing it in there, but I'm not sure. Oh, here. It's tab 19, page 67. Pardon? It looks like it's joint appendix, page 67 it starts on. Yeah, it looks like 68. 68. And then if you look at the beginning. 68 through 71. But I think Judge Hughes, I think, had a question. Yes, I'm sorry. Well, I take it it's your view that we're not reviewing why they made their decision to revoke this offer and not extend the extension. I mean, up until September 26, they could have decided for any reason. Maybe the work completely dried up and they didn't need anybody anymore. They could have decided not to reappoint him. That's correct, Your Honor. And Mr. Reddick has never challenged the merits of the decision to revoke his extension here. He did before the arbitrator, but he's never appealed the arbitrator's decision that it was fine to issue the revocation based on the OIG report. The only issue he raises is... How did, practically speaking, the agencies use their appointment authority and demonstrate that these terms had been either extended or new terms, however you want to do it? Yes, Your Honor. And this is in response to your earlier question. For the employees who were extended, on September 27, 2012, they received new SF50s. With the new NDAs. So what would have happened here if he got this offer to extend and he accepted it? And on September 26, there was no new SF50 issued reappointing him. Could this document legally satisfy as an appointment document? Well, I think under Reagan, the SF50 wouldn't necessarily be required for the appointment, although that case recognized you can still revoke, but that held that you don't need the SF50. So you think this document could be a legal appointment document? I think you need the SF50 for the appointment to be completed, but I think the case law says that that's not kind of the last thing. Is that for a reappointment? Yes, they issue these either for the reappointment or the extension. So if it's not a reappointment, just an extension, do you still need a new SF50? Yes, all the other employees who were extended, the temporary employees, all received SF50s on September 27. So if Your Honors have no further questions... Do you have any questions? No. No, thank you. Thank you. Your Honor, just three quick points. I'd just like to ask you a question of picking up on the colloquy with opposing counsel. There was discussion about how at the time of the rescission of the offer, the agency knew about the recording of the conversations and so forth. Supposing what we had here was a situation where something came to light after, say, on August 1, after Mr. Reddick accepted the offer on April 18. Information came to the agency's attention that it did not have before. What would be the situation then? Your Honor... Under those circumstances, in your view, have rescinded the offer? Your Honor, in that situation, the appropriate course would be for the agency to propose a removal and afford the employee here, Mr. Reddick? No, what if it just said, no, we're not going to remove you, we're just not going to renew the term. We're rescinding the extension of April 13, 18. Your Honor, this notion that an agency can rescind an already accepted offer to extend without calling it a removal and without giving the employee Chapter 7513 due process rights is simply a fiction. It's not a real personnel action. It doesn't exist and there's no authority for it. Well, one of the things, what exactly did Mr. Reddick lose here? I mean, it's undisputed he continued to the end of the original two-year period, correct? Correct. And while I can certainly see there were failed expectations and disappointment on his part,  There's nothing on his record that's negative. They just rescinded an offer and he was fully paid. What did he really lose? Your Honor, Mr. Reddick lost two very important things. First, he lost the rights that Congress intended for him to have. He lost his rights to procedural due process before being forced to leave FDIC two years earlier than he had anticipated. And as a result, because he was involuntarily forced to leave FDIC in 2012 as opposed to 2014, he lost two years of pay. If this letter, if this offer letter said, we are going to offer you a second two-year term and at the expiration on September 26th, you will be given a second two-year term effective September 27th. That's not extending the term, right? That's a new second-year appointment. I understand your objections to that, that they couldn't do it. Assume that's not the case. Yeah, that's correct. That's correct, Your Honor. And so if that happened, even if he had accepted the second two-year term, they could, before it starts, revoke it, right? Yes. And so they could just say, we're not going to give you this new two-year term. Correct. And that's just an entirely different situation. That's the opposite of what occurred here. Well, so that's what kind of troubles me a little bit about your argument, because it seems like you're saying there's a blurring of the facts and the law here. If we read this April letter as doing exactly that, saying your second two-year term will be effective, and it does use the word effective, September 26th, or September 27th, 2012, then isn't that precisely that situation? Your Honor, the word reappointment is never used in this letter. The word extension is used. And FDIC has conceded it relied on the term extension regulation, not the reappointment regulation. So we do not have a reappointment. As to the effective date, we believe the letter from FDIC must be read in conjunction with the regulation that authorized it, all of which pertain to extensions. An effective date would make sense in a situation where you have a reappointment, where you're going to have a start date, an effective date. That is not this situation. Mr. Reddick was already on the job. And the extension served to... What are the circumstances under which the agency will make a reappointment versus an extension? Well, I believe the agency would have the option to do either. And here I simply chose the extension course as to the reappointment course. And I say that with the caveat that in a competitive service term position... Does this change the employee's seniority status or performance status or anything like that? I say that because I'm looking at the FDIC management report at J57. And it's talking about rhetoric being instrumental. This is after knowledge about the recordings that come out. And they say that he's a lead investigator on another case. He has satisfactory performance. He's got 40-plus years of investigative experience. Says Tim is a valuable resource for training fraud. He's valuable for training other folks in other regions. So does this change, does this alter that evaluation if he's reappointed versus extended? I'm not sure if I followed the question. Whether he's reappointed or his employment is extended, does that alter his status as an employee in terms of seniority, in terms of his work history and things of that nature? Your Honor, I'm not sure about the seniority. I would think not, but I'm not sure. But as far as his work history and his past successful performance, that would obviously still be there. And I think it's important here, as our friend on the other side and Your Honor has discussed, FDIC knew about this conduct before it extended Mr. Reddick's employment, before it made its offer. J57, that internal email chain, we don't believe that reflects a misunderstanding or any confusion. We believe it's clear. FDIC knew what was happening. And in contrast to FDIC's view, we don't believe the OIG report characterized what happened to the illegal. We think it's more accurate to say that it remained an open question. Okay, you're well into your time. Do you want to have a closing thought? Your Honor, in conclusion, we believe the offer letter and FDIC's concession that relied on 5 CFR Part 316.31, the term extension regulation for that letter, we believe those two things answer the question here, which is that Mr. Reddick was extended, and therefore under board precedent he was removed, and FDIC canceled the final two years of his four-year term employment. Thank you.